# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **JOHN EDWARD CAMPBELL and ANGELA DENISE CAMPBELL, A/N/F J.E.C., a minor,** | § § § § | |
| *Plaintiffs,* | § § | |
| **vs.** | § § | **Civil Case No. 3:23-cv-00771-E** |
| **COPPELL INDEPENDENT SCHOOL DISTRICT,** | § § § | |
| *Defendant.* | § § | |

---

## DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND BRIEF IN SUPPORT THEREOF

---

**CHARLES J. CRAWFORD**
State Bar No. 05018900
**CHAD TIMMONS**
State Bar No. 24060732
**LUCAS C. HENRY**
State Bar No. 24101901
**ABERNATHY, ROEDER, BOYD & HULLETT, P.C.**
1700 Redbud Boulevard, Suite 300
McKinney, Texas 75069
Telephone: 214-544-4000
Facsimile: 214-544-4040
ccrawford@abernathy-law.com
ctimmons@abernathy-law.com
lhenry@abernathy-law.com

**ATTORNEYS FOR DEFENDANT COPPELL INDEPENDENT SCHOOL DISTRICT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION .................................................................................................................. 1

DISMISSAL PURSUANT TO RULE 12(b)(6) .................................................................... 1

    A.   Standard for Dismissal Under Rule 12(b)(6) ................................................... 1

    B.   Facts Relevant to This Motion to Dismiss ....................................................... 3

    C.   Plaintiffs' Claim Under 42 U.S.C. §2000d is Not Plausible ........................... 7

    D.   Plaintiffs' Claim Under 20 U.S.C. §1681 is Not Plausible ........................... 10

    E.   Plaintiffs' Claim Under 42 U.S.C. §1983 is Not Plausible ........................... 12

        1.   Monell liability does not apply on the face of Plaintiffs' Complaint ..................... 12

        2.   Plaintiffs have not alleged facts showing their due process claims are plausible ……………………………………………………………………..14

        3.   Plaintiffs have not alleged facts showing their equal protection claim is plausible ……………………………………………………………………..17

CONCLUSION AND PRAYER ........................................................................................... 19

CERTIFICATE OF SERVICE ............................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Allred's Produce v. U.S. Dep't of Agric.,* 178 F.3d 743 (5th Cir. 2000) ........................ 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 2

*B.W. v. Austin Indep. Sch. Dist.,* 2023 U.S. App. Lexis 463 (5th Cir. 2023)............................. 8, 9

*Beeler v. Rounsavall,* 328 F.3d 813 (5th Cir. 2003) ...................................................... 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................... 2

*Bennett v. City of Slidell,* 735 F.2d 861 (5th Cir. 1984) ................................................. 13

*Bhombal v. Irving Indep. Sch. Dist.,* 809 Fed. Appx. 233 (5th Cir. 2020)..................................... 7

*Bridges v. Scranton Sch. Dist.,* 66 F.Supp.3d 570 (M.D. Pa. 2014) ..................................... 8, 9, 10

*Brooks v. Ross,* 578 F.3d 574 (7th Cir. 2009)................................................................ 2

*Bryan v. City of Madison,* 213 F.3d 267 (5th Cir. 2000) ................................................... 18

*Chandamuri v. Georgetown Univ.,* 274 F.Supp.2d 71 (D.D.C. 2003) ............................................. 9

*City of Canton v. Harris,* 489 U.S. 378 (1989) ............................................................ 12

*City of Cleburne, Tex. v. Cleburne Living Center, Inc.,* 473 U.S. 432 (1989)............................... 17

*Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496 (5th Cir. 2000) ....................................... 3

*Davis v. Georgia St. Bd. of Educ.,* 408 F.2d 1014 (5th Cir. 1969) ........................................ 18

*Davis v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629 (1999) ............................................... 10, 11

*Deville v. Marcantel,* 567 F.3d 156 (5th Cir. 2009) ...................................................... 12

*Doe v. Dallas Indep. Sch. Dist.,* 534 F.Supp.3d 682 (N.D. Tex. 2021)...................................... 10

*Doe v. Edgewood Indep. Sch. Dist.,* 964 F.3d 351 (5th Cir. 2020) ................................... 10, 11, 12

*Escuadra v. Geovera Specialty Ins. Co.*, 739 F.Supp.2d 967 (E.D. Tex. 2010)................................. 2

*Fennell v. Marion Indep. Sch. Dist.,* 804 F.3d 398 (5th Cir. 2015).......................................... 8

*Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278 (5th Cir. 1993)...................................... 2

*Franklin v. Gwinnett Cty. Pub. Sch.,* 503 U.S. 60 (1992) ................................................. 10

*Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274 (1998) ................................................. 10, 11

*Goss v. Lopez,* 419 U.S. 565 (1975) ........................................................................................... 16

*Griffith v. Cinepolis USA, Inc.,* 2022 U.S. Dist. Lexis 23324 (N.D. Tex. 2022) ........................... 3

*Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685 (5th Cir. 2011) ............................................. 16

*Hines v. Quillivan,* 982 F.3d 266 (5th Cir. 2020) ...................................................................... 18

*Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167 (2005) ......................................................... 11

*Jackson v. City of Hearne, Tex.,* 959 F.3d 194 (5th Cir. 2020) ................................................... 13

*Johnson v. Rodriguez,* 110 F.3d 299 (5th Cir. 1997) ................................................................. 18

*Jones v. Southern Univ.,* 834 Fed. Appx. 919 (5th Cir. 2020) ...................................................... 7

*L&F Homes & Dev., L.L.C. v. City of Gulfport,* 538 Fed. Appx. 395 (5th Cir. 2013) ................. 15

*Littell v. Houston Indep. Sch. Dist.,* 894 F.3d 616 (5th Cir. 2018) ............................................. 12

*Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258 (5th Cir. 2019) ....................... 15

*M.E. v. Alvin Indep. Sch. Dist.,* 840 Fed. Appx. 773 (5th Cir. 2020) ......................................... 11

*Mahone v. Addicks Util. Dist. of Harris Cnty.,* 836 F.2d 921 (5th Cir. 1988) ............................. 18

*McClelland v. Katy Indep. Sch. Dist.,* 63 F.4th 996 (5th Cir. 2023) ........................................... 17

*McCleskey v. Kemp,* 481 U.S. 279 ............................................................................................. 18

*Menzia v. Austin Indep. Sch. Dist.*, 47 F.4th 354 (5th Cir. 2022) ................................................ 8

*Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658 (1978) ................................. 12, 13, 14

*Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 1997 U.S. App. Lexis 14955 (5th Cir. 1997).. ..................................................................................................................................... 16, 17

*Pathria v. Univ. of Tex. Health Sci. Ctr. at San Antonio,* 531 Fed. Appx. 454 (5th Cir. 2013) ....... 9

*Pineda v. City of Houston,* 291 F.3d 325 (5th Cir. 2002) ............................................................ 12

*Poloceno v. Dallas Indep. Sch. Dist.,* 826 Fed. Appx. 359 (5th Cir. 2020) ................................. 10

*Richard v. Hinson,* 70 F.3d 415 (5th Cir. 1995) ........................................................................ 17

*Robinson v. Hunt Cty., Tex.,* 921 F.3d 440 (5th Cir. 2019) ......................................................... 12

*S.P. v. Northeast Indep. Sch. Dist.,* 2021 U.S. Dist. Lexis 142257 (W.D. Tex. 2021) ............ 10, 11

*Salazar v. S. San Antonio Indep. Sch. Dist.,* 953 F.3d 273 (5th Cir. 2017) ................................... 10

*San Antonio Ind. Sch. Dist. v. Rodriguez,* 411 U.S. 1 (1973).................................................... 17

*Scanlan v. Tex. A&M Univ.,* 343 F.3d 533 (5th Cir. 2003)........................................................ 2

*Sewell v. Monroe City Sch. Bd.,* 2022 U.S. App. Lexis 18013 (5th Cir. 2022)........................ 8, 10

*Sewell v. Monroe City Sch. Bd.,* 974 F.3d 577 (5th Cir. 2020)............................................. 7, 8, 10

*Shepard v. Cleveland Sch. Dist.,* 822 Fed. Appx. 312 (5th Cir. 2020)........................................ 15

*Simi Inv. Co. v. Harris Cnty.,* 236 F.3d 240 (5th Cir. 2000)........................................................ 15

*Smith v. Davis,* 507 Fed. Appx. 359 (5th Cir. 2013) ................................................................. 16

*Swindle v. Livingston Parish Sch. Bd.,* 655 F.3d 386 (5th Cir. 2011) ........................................ 16

*Torch Liquidating Trust v. Stockstill,* 561 F.3d 377 (5th Cir. 2009)............................................ 2

*Trudeau v. Univ. of N. Texas,* 861 Fed. Appx. 604 (5th Cir. 2021) ............................................ 11

*Txi Operations, LP v. City of McKinney,* 2023 U.S. Dist. Lexis 5100 (E.D. Tex. 2023)........ 18, 19

*United States ex rel. Riley v. St. Lukes Episcopal Hosp.,* 355 F.3d 370 (5th Cir. 2004) ............ 3, 6

*Valle v. City of Houston,* 613 F.3d 536 (5th Cir. 2010) ................................................................. 13

*Village of Willowbrook v. Olech,* 528 U.S. 562 (2000) ................................................................. 18

*Villarreal v. City of Laredo,* 44 F.4th 363 (5th Cir. 2022) ........................................................... 19

*Walsh v. Louisiana High School Athletic Assoc.,* 616 F.2d 152 (5th Cir. 1980) ......................... 16

*Webster v. City of Houston,* 735 F.2d 838 (5th Cir. 1984) ........................................................... 13

*Woods v. Edwards,* 51 F.3d 577 (5th Cir. 1995)........................................................................... 18

*Wright v. Arlington Indep. Sch. Dist.,* 834 Fed. Appx. 897 (5th Cir. 2020) .................................. 9

## STATUTES AND RULES

20 U.S.C. §1681 (Title IX) ......................................................................................... passim

42 U.S.C. §1983......................................................................................................... passim

42 U.S.C. §2000d (Title VI)........................................................................................ passim

Fed. R. Civ. P. 12(b)(6) ..................................................................................... passim

Local Rule 7.1(i) ....................................................................................................... 3

Defendant Coppell Independent School District ("CISD") files the following motion to dismiss Plaintiffs' Complaint [Dkt. 1] pursuant to Fed. R. Civ. P. 12(b)(6) and brief in support thereof.

## I.
## INTRODUCTION

1.1    Plaintiffs are John Edward Campbell and Angela Denise Campbell as next friends of their minor son J.E.C., a former student in CISD; the Defendant is CISD, a Texas public school district. Dkt. 1, ¶¶ 3-6. According to the Complaint, "Plaintiffs believe their son was treated in a discriminatory manner because of his race [white] and/or his gender [male]. Plaintiffs believe multiple District employees retaliated against Plaintiffs and/or their son for their earlier complaint about the science assignment referenced supra.[1]" Dkt. 1, ¶ 17. Based on this belief, Plaintiffs assert causes of action against CISD pursuant to (1) 42 U.S.C. §2000d (Title VI), (2) 20 U.S.C. §1681 (Title IX) and (3) 42 U.S.C. §1983. Dkt. 1, ¶¶ 45-49.

1.2    As will be detailed below, Plaintiffs' Complaint does not allege facts sufficient to state plausible claims for relief under any of these three statutes. Therefore, the Court should dismiss these claims pursuant to Rule 12(b)(6).

## II.
## DISMISSAL PURSUANT TO RULE 12(b)(6)

### A.  Standard for Dismissal Under Rule 12(b)(6)

2.1    A court has authority under Fed. R. Civ. P. 12(b)(6) to dismiss a suit for failure to state a claim upon which relief can be granted if the complaint does not provide fair notice of the claim and does not state factual allegations showing that the right to relief is plausible. See *Ashcroft v.*

---

[1] "On October 20, 2021, a teacher gave her class, which include[d] the Plaintiffs' child, an assignment to research and write about 'diverse' atomic theory scientists. The teacher providing clarification for what was meant by 'diverse' by stating to the class that they can 'pick any scientist other than an 'old dead white guy.''" Dkt. 1, ¶ 10.

*Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007). A complaint that provides only labels and conclusions or a formulaic recitation of the elements is insufficient to show grounds for the plaintiff to be entitled to relief. *Id*.; see also *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993) (a plaintiff's "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). Further, a Rule 12(b)(6) "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief..." *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) (citations omitted).

2.2    While detailed factual allegations are not required, plaintiffs must allege *facts* sufficient to "nudge [ ] their claims across the line from conceivable to plausible...." *Twombly*, 550 U.S. at 570. Stated another way, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level"; "some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Id*. at 555; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

2.3    After *Twombly* and *Iqbal*, "it is now abundantly clear that identifying only what law forms the basis of the complaint, without pleading facts indicating *how* a defendant violated that law, proves only a theoretical possibility that a cause of action *could* be stated against the defendant, not that plaintiff *did* state a cause of action." *Escuadra v. Geovera Specialty Ins. Co.*, 739 F.Supp.2d 967, 979 (E.D. Tex. 2010).

2.4    Additionally, although the courts generally may not "go outside the complaint" in determining whether to grant a Rule 12(b)(6) motion to dismiss, a court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Scanlan v. Tex. A&M Univ.,* 343 F.3d 533, 536 (5th Cir. 2003); *Collins v.*

*Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000). Here, Plaintiffs' Complaint alleges that the Coppell police department "filed a written report" and relies on these "written findings of law enforcement" as the foundation for their claims. See Dkt. 1, ¶¶ 15-16. Thus, a copy of the Incident Report filed by the Coppell Police Department (which contains the "written findings of law enforcement" referred to in the Complaint) is attached to the accompanying Appendix of Exhibits as Exhibit 1.[2] In addition, Plaintiffs' Complaint relies on school board policies FO (LEGAL), FO (LOCAL) and FOC (LEGAL) as the basis for their Section 1983 claim. See Dkt. 1, ¶¶36-38, 46. Thus, copies of these policies are attached as Exhibits 2, 3 and 4 to the Appendix. Further, Plaintiffs' Complaint also relies on the Student Code of Conduct as a basis for their Section 1983 claim. See Dkt. 1, ¶¶ 39-40. Thus, a copy of the Student Code of Conduct is attached as Exhibit 5 to the Appendix. Because all of these exhibits are referred to in Plaintiffs' Complaint and are central to Plaintiffs' claims, the Court may properly consider all of these attached exhibits in determining this motion.

2.5    Relevant here, although the factual allegations in a plaintiff's complaint are normally taken as true when analyzing a Rule 12(b)(6) motion, when an allegation is contradicted by the contents of an exhibit attached to the pleadings – and documents properly attached to a motion to dismiss are considered to be part of the pleadings – then the exhibit and not the allegations controls. *United States ex rel. Riley v. St. Lukes Episcopal Hosp.,* 355 F.3d 370, 377 (5th Cir. 2004); *Griffith v. Cinepolis USA, Inc.,* 2022 U.S. Dist. Lexis 23324, *8 (N.D. Tex. 2022).

**B.  Facts Relevant to This Motion to Dismiss**

2.6    The following facts are taken from Plaintiffs' Complaint and the exhibits attached to the Appendix.

---

[2] Pursuant to Local Rule 7.1(i), the Appendix of Exhibits is assembled as a self-contained document, separate from this motion.

2.7      Plaintiffs' minor child, J.E.C., was a student at New Tech High @ Coppell during the 2021-2022 school year. Dkt. 1, ¶¶1, 9.

2.8      "The background of this proceeding is about a high school chemistry teacher trying to put pressure on the Texas Education Agency to change science curriculum in Texas. This assignment was a recommendation to science teachers from the American Chemical Society. On October 20, 2021, a teacher gave her class, which included the Plaintiffs' child, an assignment to research and write about 'diverse' atomic theory scientists. The teacher providing clarification for what was meant by 'diverse' by stating to the class that they can pick any scientist other than an 'old dead white guy.'" Dkt. 1, ¶10.

2.9      "The Plaintiffs' son felt very uncomfortable with an assignment that was exclusively based on race and gender and specifically discriminated against him on the basis of race and gender. … The Plaintiffs notified the school of this issue immediately. …" Dkt. 1, ¶11.

2.10     "On December 17, 2021, when the Plaintiffs did not receive any [immediate] response from the District about their concerns, the Plaintiffs applied for a transfer to another campus for their son and that transfer was granted." Dkt. 1, ¶12.

2.11     "Weeks later, on January 3, 2022, the assistant principal from New Tech High @ Coppell, Ms. Raheela Shaikh ("Shaikh"), handled an alleged report, on a third-party platform for safety reports called StopIt Solutions. The allegation was that Plaintiffs' son making a threatening comment a month prior to the report on Discord, a third-party social media group. Discord is unaffiliated with the District and is organized and managed by children." Dkt. 1, ¶13.

2.12     "On January 3, 2022, the local police found that no offense occurred, and filed a written report that same day concluding that the allegation was unfounded. …" Dkt. 1, ¶15.

2.13    "On January 3, 2022, Shaikh pursued action against Plaintiffs' child in direct opposition of

the findings by law enforcement and Freeman, detailed supra. The District removed Plaintiffs' son

from his campus to a disciplinary placement, despite Plaintiffs providing the written findings of

law enforcement and the security officer." Dkt. 1, ¶16.

2.14    "It is the Plaintiffs' contention that the District staff mishandled every part of these steps

and engaged in misconduct against their son. Plaintiffs believe that multiple District employees

acted outside the scope of employment duties to harm their son. Plaintiffs believe that multiple

District employees created false government documents. Plaintiffs believe multiple District

employees may have intentionally provided false information to law enforcement against their son.

Plaintiffs believe their son was treated in a discriminatory manner because of his race and/or his

gender. Plaintiffs believe multiple District employees retaliated against Plaintiffs and/or their son

for their earlier complaint about the science assignment referenced supra." Dkt. 1, ¶17.

2.15    However, the above allegations in the Plaintiffs' Complaint about "the background of this

proceeding" – specifically the suggestion that law enforcement found that Plaintiffs' son did not

make a threatening comment towards his teacher on social media – are misleading at best. Thus,

so that the Court is clear about the true facts of "the background of this proceeding," a copy of the

Incident Report filed by the Coppell Police Department (the "written findings of law enforcement"

referred to in Plaintiffs' Complaint) is attached to the Appendix as Exhibit 1. The Incident Report

states, in relevant part:

> On 1/3/2022 at approximately 0014 hours, I, Officer J. Duncan, was
> dispatched to a call from Stop It Solutions, which is a tip reporting
> service utilized by New Tech High School, located at 113 Samuel
> Blvd., Coppell, Dallas County, Texas. A representative of the
> service, identified as "Agent 3," advised a report was received from
> an anonymous New Tech High School student stating another
> student in 10th grade, ***John Campbell [Petitioners' son], threatened
> to kill a teacher Haley Arroyo***. … I contacted Stop It Solutions and

requested the incident that was forwarded and was emailed incident [redacted]. The email showed a screenshot of a conversation. … I attached the screenshot of the conversation to this report.³

…

Det. Benson and Sgt. Louderback went to [address] and met with John Campbell (Father), Angela Campbell (Mother), and John Campbell aka "Jack." From here forward the son will be referred to as Jack. Det. Benson showed John and Angela the social media post with the username. John advised that was his son, Jack's username. …

***Jack admitted he posted those comments*** out of frustration, but did not ever intend to hurt anyone. Jack advised the post was actually on a social media app called Discord, under a channel by that was setup for New Tech school students to specifically post their frustrations. ***Jack admitted it was a poor word choice and he should have never posted it***. Jack was apologetic and very respectful. …

John, Angela, and Jack were advised at this time, this incident would be documented as an information report and would not be criminal in nature.

… Det. Benson explained to Haley [Arroyo] that the incident did not rise to a criminal level, but would be documented within the information report.

Appendix, p. 2. In other words, as detailed in the Incident Report, ***J.E.C. admitted to the police that he did post on social media about his teacher that "I HATE ARROYO. im going [t]o fucking kill her."*** Regardless of whether the police decided to not arrest J.E.C., this threatening conduct nevertheless actually happened, and its report by an anonymous New Tech High School student to a tip reporting service was not "unfounded." Critically, the contents of the Incident Report, and not Plaintiffs' allegations characterizing this report, controls. *United States ex rel. Riley,* 355 F.3d at 377.

---

³ The screenshot of J.E.C.'s social media post threating to kill his chemistry teacher (***"I HATE ARROYO. im going [t]o fucking kill her"***) is attached as the last page of Exhibit 1.

2.16    Finally, Plaintiffs' Complaint alleges that CISD school board policies FO (LEGAL), FO (LOCAL) and FOC (LEGAL) were the "moving force" causing the violation of J.E.C.'s Fourteenth Amendment rights, specifically that these policies "provide for the discipline of students without regard to a prohibition against retaliating against a student for asserting his rights to not being discriminated against." Dkt. 1, ¶¶ 36-38, 46. However, policy FO (LOCAL), for example, expressly provides:

> The District's rules of discipline are maintained in the Board-adopted Student Code of Conduct and are established to support an environment conducive to teaching and learning.
>
> Rules of conduct and discipline shall not have the effect of discriminating on the basis of gender, race, color, disability, religion, ethnicity, or national origin.

Exhibit 3 to the Appendix, p. 14.

## C.  Plaintiffs' Claim Under 42 U.S.C. §2000d is Not Plausible

2.17    Plaintiffs' Complaint asserts a cause of action under 42 U.S.C. §2000d (Title VI) and its procedural regulations for alleged race discrimination/retaliation. Dkt. 1, ¶¶2, 17, 23-25, 47. However, for the reasons below, Plaintiffs' claim under Title VI is not plausible and should therefore be dismissed pursuant to Rule 12(b)(6).

2.18    Title VI prohibits race discrimination in all programs receiving federal funds. 42 U.S.C. §2000d.[4] Title VI claims can involve three theories of potential liability: intentional race discrimination, harassment or hostile environment race discrimination, and retaliation. *See Sewell v. Monroe City Sch. Bd.,* 974 F.3d 577, 583 (5th Cir. 2020); *Bhombal v. Irving Indep. Sch. Dist.,* 809 Fed. Appx. 233, 236 (5th Cir. 2020).

---

[4] Title VI claims "may be brought only against the institution receiving federal funds, not employees of those institutions." *Jones v. Southern Univ.,* 834 Fed. Appx. 919, 923 (5th Cir. 2020).

2.19    With respect to discrimination claims, Title VI "prohibits only *intentional* discrimination," meaning that "[a] school board, as a federal funding recipient, cannot intentionally treat students differently on the basis of race or sex." *Sewell,* 974 F.3d at 583; *B.W. v. Austin Indep. Sch. Dist.,* 2023 U.S. App. Lexis 463, * 13 (5th Cir. 2023) (quoting *Fennell v. Marion Indep. Sch. Dist.,* 804 F.3d 398, 407 (5th Cir. 2015)). Thus, "to receive compensatory damages, a Title VI plaintiff must prove discriminatory intent." *Fennell,* 804 F.3d at 408; *Sewell v. Monroe City Sch. Bd.,* 2022 U.S. App. Lexis 18013, *3 (5th Cir. 2022).

2.20    Regarding Title VI racial harassment/hostile environment claims, "[i]n the educational setting, a school district is liable for intentional discrimination when it has been 'deliberately indifferent' to teacher or peer harassment. Restated, 'a plaintiff may recover for alleged 'severe, pervasive, and objectively offensive' [ ] harassment if the school 'acts with deliberate indifference to known acts of harassment.' This requires that the school has 'actual knowledge' of the harassment. A school is liable for a claim of teacher or peer harassment only when its actions are 'clearly unreasonable in light of the known circumstances.'" *Bridges v. Scranton Sch. Dist.,* 66 F.Supp.3d 570, 589 (M.D. Pa. 2014) (internal citations omitted). Thus, under Title VI, "a racially hostile environment requires Plaintiffs to show (1) that racial harassment was so severe, pervasive, and objectively offensive that it deprived [the student] of access to educational opportunity and (2) that the school acted with deliberate indifference to the harassment." *Id.* at 590. *See also Sewell,* 974 F.3d at 583-84 ("[T]he harassment [must] have been so severe, pervasive, and offensive that it denied Sewell an educational benefit. To satisfy this requirement, the harassment must have had a 'concrete, negative effect' on Sewell's education.") (quoting *Fennell,* 804 F.3d at 410); *Menzia v. Austin Indep. Sch. Dist.*, 47 F.4th 354, 360 (5th Cir. 2022) (same).

2.21    Finally, assuming Title VI includes claims for retaliation[5], to successfully plead such a claim a plaintiff must show (1) that he engaged in a protected activity; (2) that the school district took a material action against him; and (3) that a causal connection existed between the protected activity and the adverse action. *B.W.,* 2023 U.S. App. Lexis 463 at *22; *see also Chandamuri v. Georgetown Univ.,* 274 F.Supp.2d 71, 84 (D.D.C. 2003) (listing elements).

2.22    Here, Plaintiffs' Complaint does not allege a plausible Title VI claim under any of the three above theories of liability – the Complaint does not plead facts to plausibly show that CISD intentionally discriminated against J.E.C. because he is white; that CISD was consciously indifferent to J.E.C.'s treatment because he is white; that any alleged harassment by CISD was so severe, pervasive or objectively offensive to deny him educational benefits or opportunities; or that CISD retaliated against J.E.C. because he engaged in any protected conduct. There are no allegations showing J.E.C. was treated differently than other students because of his race.[6] Rather, the facts show J.E.C. was placed in CISD's disciplinary alternative education program ("DAEP") solely because he ***admittedly*** posted on social media that he was going to kill his teacher – conduct that violates CISD's Student Code of Conduct. As a result, Plaintiffs' Title VI claim is not plausible, therefore warranting dismissal pursuant to Rule 12(b)(6). *See, e.g., Wright v. Arlington Indep. Sch. Dist.,* 834 Fed. Appx. 897, 902 (5th Cir. 2020) (affirming dismissal of Title VI claim under Rule 12(b)(6)); *Pathria v. Univ. of Tex. Health Sci. Ctr. at San Antonio,* 531 Fed. Appx. 454, 455 (5th Cir. 2013) (same). As the court observed in *Bridges,* "courts should refrain from second-guessing

---

[5] "As this circuit has done in recent decisions, we will assume without deciding that Title VI includes a claim for retaliation." *B.W.,* 2023 U.S. App. Lexis 463 at *21.

[6] For example, all students in J.E.C.'s class were told not to write about "old dead white guys" – J.E.C. was not singled out for this assignment. See Dkt. 1, ¶ 10 ("The teacher providing clarification for what was meant by 'diverse' ***by stating to the class that they*** can 'pick any scientist other than an old dead white guy.'")

the disciplinary decisions made by school administrators." 66 F.Supp.3d at 590 (quoting *Davis v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 648 (1999)).

### D.  Plaintiffs' Claim Under 20 U.S.C. §1681 is Not Plausible

2.23    Plaintiffs' Complaint asserts a cause of action under 20 U.S.C. §1681 (Title IX) and its procedural regulations for alleged sex discrimination/retaliation. Dkt. 1, ¶¶ 2, 26-28, 47. However, for the reasons below, Plaintiffs' claim under Title IX is not plausible and should therefore be dismissed pursuant to Rule 12(b)(6).

2.24    "Title IX [20 U.S.C. §1681(a)] was modeled after Title VI and bans sex discrimination in educational programs receiving federal funds. We interpret these kindred statutes in the same fashion." *Sewell,* 974 F.3d at 583. Like with Title VI race discrimination, under Title IX "schools are liable only for *intentional* sex discrimination." *Sewell,* 2022 Lexis 18013 at *3; *Doe v. Edgewood Indep. Sch. Dist.,* 964 F.3d 351, 358 (5th Cir. 2020).

2.25    According to the Fifth Circuit, "[t]here are two avenues for stating a Title IX claim. First a plaintiff can show that the institution has an official policy of sex discrimination. Or, second, a plaintiff can show a Title IX violation where an 'appropriate person' had 'actual knowledge of the discrimination' and responded with 'deliberate indifference.'" *Poloceno v. Dallas Indep. Sch. Dist.,* 826 Fed. Appx. 359, 362 (5th Cir. 2020) (citing *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998)); *see also Doe v. Dallas Indep. Sch. Dist.,* 534 F.Supp.3d 682, 688 (N.D. Tex. 2021) (same).[7]

2.26    Moreover, "[w]hile Title IX expressly mentions discrimination, sexual harassment and abuse are likewise proscribed." *S.P. v. Northeast Indep. Sch. Dist.,* 2021 U.S. Dist. Lexis 142257, *6 (W.D. Tex. 2021) (citing *Franklin v. Gwinnett Cty. Pub. Sch.,* 503 U.S. 60, 75 (1992)). However,

---

[7] The "appropriate person or persons" for purpose of school district knowledge is not the alleged offending school district employee(s). *Salazar v. S. San Antonio Indep. Sch. Dist.,* 953 F.3d 273, 858-59 (5th Cir. 2017).

"a Title IX 'action will lie only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit.'" *Id.* (quoting *Davis ex rel. Lashonda D. v. Monroe Cty. Bd. of Educ.,* 526 U.S. 629, 633 (1999)). "Further, although the Supreme Court has recognized an implied right of action under Title IX for teacher-on-student sexual harassment, 'damages may not be recovered in those circumstances unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct.'" *Id.* at *7 (quoting *Gebser,* 524 U.S. at 277). "In short, Title IX requires actual notice to an 'appropriate person' and 'an opportunity for voluntary compliance.' And deliberate indifference is a 'high bar' where 'neither negligence nor mere unreasonableness' suffices." *Id.* (quoting *Doe,* 964 F.3d at 358). Notably, "Title IX does not create vicarious liability for the acts of a district employee." *M.E. v. Alvin Indep. Sch. Dist.,* 840 Fed. Appx. 773, 775 (5th Cir. 2020).

2.27    In addition to sex discrimination and harassment complaints, the Fifth Circuit has noted that "[t]he Supreme Court has held that the private right of action implied by Title IX includes claims of retaliation 'where the funding recipient retaliates against an individual because he has complained about sex discrimination.'" *Trudeau v. Univ. of N. Texas,* 861 Fed. Appx. 604, 607 (5th Cir. 2021) (quoting *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 163 (2005)). "To establish a prima facie case of retaliation under Title IX, a plaintiff must show that (1) he engaged in a protected activity; (2) he was subjected to an adverse [ ] action; and (3) a causal link exists between the protected activity and the adverse [ ] action." *Id.*

2.28    Here, Plaintiffs' Complaint does not allege a plausible Title IX sex discrimination claim under any of the above theories – the Complaint does not plead facts to plausibly show that CISD has an official policy of sex discrimination; that an appropriate person at CISD had knowledge of

sex discrimination against J.E.C. and responded with deliberate indifference; or that CISD retaliated against J.E.C. because he reported alleged sex discrimination. Rather, the facts show J.E.C. was placed in DAEP solely because he **admittedly** posted on social media that he was going to kill his teacher – conduct that violates CISD's Student Code of Conduct. Plaintiffs' Title IX claim should be dismissed because it is not plausible.

**E. Plaintiffs' Claim Under 42 U.S.C. §1983 is Not Plausible**

2.29    Plaintiffs' Complaint asserts a cause of action under 42 U.S.C. §1983 for the alleged denial of J.E.C.'s equal protection rights and procedural and substantive due process rights under the Fourteenth Amendment. Dkt. 1, ¶¶ 2, 29-40, 48-49. However, for the reasons below, Plaintiffs' Section 1983 claim is not plausible and should therefore be dismissed pursuant to Rule 12(b)(6).

**1. *Monell* liability does not apply on the face of Plaintiffs' Complaint**

2.30    For Section 1983 liability to apply to CISD, the higher courts have made clear that "respondeat superior does not apply to municipalities for claims under §1983." *Deville v. Marcantel,* 567 F.3d 156, 170 (5th Cir. 2009) (citing *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)). Instead, liability may be imposed "only where [the government entity] itself causes the constitutional violation at issue." *City of Canton v. Harris,* 489 U.S. 378, 385 (1989). This applies to school districts. *Littell v. Houston Indep. Sch. Dist.,* 894 F.3d 616, 622 (5th Cir. 2018). Thus, "[t]o state a claim for [school district] liability under 42 U.S.C. §1983, a plaintiff must allege (1) an official policy (or custom), of which (2) a [school district] policy maker[8] can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Robinson v. Hunt Cty., Tex.,* 921 F.3d 440, 447 (5th Cir. 2019) (quoting *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002)). An official policy is:

---

[8] "Texas law is clear that final policymaking authority in an independent school district rests with the district's board of trustees." *Doe,* 964 F.3d at 365.

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which although not authorized by officially adopted or promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir. 1984). In sum, in order for Plaintiffs to succeed on their Section 1983 claim against CISD, they must establish that CISD's official policy or firmly entrenched custom caused the alleged constitutional violations. *See Monell,* 436 U.S. at 694. Put differently, Plaintiffs mut show that the "execution of [CISD's] policy or custom… inflicts the injury [.]" *Jackson v. City of Hearne, Tex.,* 959 F.3d 194, 204 (5th Cir. 2020) (quoting *Monell,* 436 U.S. at 694). Further, Plaintiffs must allege and prove knowledge – but, importantly, "actual or constructive knowledge of a custom must be attributable to the governing body of [CISD] or to an official to whom that body has delegated policy-making authority" (here, the CISD board of trustees). *Valle v. City of Houston,* 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir. 1984) (en banc)).

2.31    Here, the *only* allegations in Plaintiffs' Complaint concerning CISD's official policy are as follows:

46. Defendant's Board of Trustees adopted a policy or custom with deliberate indifference that was the moving force behind Defendant's violation of J.E.C.'s constitutional rights. Defendant's Board of Trustees adopted Policy FO (LEGAL), Policy FO (LOCAL), and Policy FOC (LEGAL) which provide for the discipline of students without regard to a prohibition against retaliating against a student for asserting his rights to not being discriminated against.

Dkt. 1, ¶ 46; see also ¶¶ 36-40. These allegations, however, do not state a plausible Section 1983 claim against CISD under *Monell*.

2.32    Critically, Plaintiffs' Complaint does not allege any facts that show CISD's board of trustees delegated any policymaking authority to any individual teacher, principal or administrator in connection with J.E.C.'s disciplinary action. To the contrary, the policies promulgated by the school board that are referred to in Plaintiff's Complaint (and attached to the Appendix as Exhibits 2-5) show a lawful disciplinary policy that incorporates a student code of conduct that J.E.C. violated when he admittedly posted that he was going to kill his teacher.

2.33    Moreover, Plaintiffs do not plead any involvement by CISD's board of trustees in, or awareness of, the disciplinary matters that make the basis of Plaintiffs' Section 1983 claim. Nor have Plaintiffs identified any "policy statement" that was "officially promulgated" by the board of trustees to ignore, condone, or cover up alleged discrimination or retaliation. Importantly, Plaintiffs' speculation and conclusory statements about the school board's official policies are insufficient to state a plausible claim under Section 1983.

2.34    In summary, Plaintiffs have not shown that the CISD board of trustees promulgated a policy (or custom) that caused constitutional injury and, as such, CISD cannot be held liable for the alleged violation of J.E.C.'s constitutional rights under *Monell*. Dismissal pursuant to Rule 12(b)(6) is warranted for this reason.

### 2.    Plaintiffs have not alleged facts showing their due process claims are plausible

2.35 Assuming, *arguendo,* that Plaintiffs have plausibly pled an official policy/custom of discrimination or retaliation, dismissal of the Section 1983 claim is nevertheless still proper

because Plaintiffs' Complaint does not allege facts showing that J.E.C.'s Fourteenth Amendment procedural or substantive due process rights[9] were plausibly violated.

2.36    To assert a due process violation, a plaintiff "must identify a life, liberty or property interest protected by the Fourteenth Amendment before identifying the state action resulting in a deprivation of that interest." *Shepard v. Cleveland Sch. Dist.*, 822 Fed. Appx. 312, 313 (5th Cir. 2020). Thus, "'[a] violation of substantive due process occurs only when the government deprives someone of liberty or property.' This claim requires a showing of (1) a constitutionally protected right and (2) an arbitrary, irrational abuse of power that effects that deprivation." *L&F Homes & Dev., L.L.C. v. City of Gulfport*, 538 Fed. Appx. 395, 405 (5th Cir. 2013) (quoting *Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2000)). In addition, with respect to procedural due process, "[t]he 'guarantee of fair procedure' requires that when the government invades a constitutionally protected interest in 'life, liberty, or property,' the government must provide due process of law. First, we ask whether a given interest 'qualifies as property interests for purposes of procedural due process. Second, we ask 'what process the State provided, and whether it was constitutionally adequate.'" *Id*. at 406 (internal citations omitted). However, when there is "no recognized property right under state law, we do not discuss the procedure." *Id*.[10]

2.37    Relevant to the Plaintiffs' claims underlying their allegations of due process violations in this case, the Fifth Circuit has repeatedly held that there is no protected interest in the separate components of the educational process, including the participation in extracurricular activities. *See, e.g., Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 270 (5th Cir. 2019);

---

[9] According to Plaintiffs' Complaint, "Defendant's Section 1983 violations as to Plaintiff J.E.C. were committed under the color of law and resulted in the violation of Plaintiff J.E.C.'s procedural and substantive due process rights[.]" Dkt. 1, ¶ 48.

[10] Here, because Plaintiffs' claims do not involve J.E.C.'s life, liberty, or property interests, there is no need to further discuss procedural or substantive due process. *L& F Homes & Dev.*, 538 Fed. Appx. at 406.

*Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 1997 U.S. App. Lexis 14955, * 5-6 (5th Cir. 1997); *Walsh v. Louisiana High School Athletic Assoc.*, 616 F.2d 152, 159 (5th Cir. 1980).

2.38    Moreover, and critically important, "a student who is not denied access to public education does not have a property or liberty interest implicated." *Smith v. Davis*, 507 Fed. Appx. 359, 362 (5th Cir. 2013), cert. denied, 133 S. Ct. 2376 (2013). Thus, according to the Fifth Circuit,

> This court has consistently held that a student who is removed from her regular public school, but is given access to an alternative education program, has not been denied her entitlement to public education. [citations omitted]. This rule is consistent with *Goss's* directive that, where state law creates an entitlement to public education, it is a student's "*total exclusion from the educational process* for more than a trivial period" that constitutes a deprivation of protected property and liberty interests subject to due process constraints. Accordingly, we have explained that ***"a student's transfer [from her regular school] to an alternative education program does not deny access to public education, and therefore does not violate the Fourteenth Amendment interest."***

*Swindle v. Livingston Parish Sch. Bd.*, 655 F.3d 386, 394 (5th Cir. 2011) (quoting *Goss v. Lopez*, 419 U.S. 565, 576 (1975) and *Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011)) (emphasis in original and added). *See also Harris,* 635 F.3d at 690 ("A student's transfer to an alternative education program does not deny access to public education and therefore does not violate a Fourteenth Amendment interest."). As the Fifth Circuit recently opined in a case similar to this one,

> In his second amended complaint, McClelland alleged that KISD [and others] violated his due process rights throughout the marijuana-related disciplinary process and his resulting placement in the DAEP. He now appeals the district court's dismissal only as to KISD. McClelland asserts that KISD violated his due process rights by imposing discipline "without establishing the three required elements of the charged statute…"
>
> We disagree with McClelland. The district court first analyzed whether he had sufficiently alleged deprivation of his property and liberty interests. In doing so, the court looked to *Nevares v. San*

> *Marcos Consolidated Independent School District,* in which this circuit held that a student's placement in an alternative education program violated no protected property interest….
>
> The district court did not err in dismissing McClelland's substantive and procedural due process claims because McClelland did not allege the deprivation of his property or liberty interests. … McClelland thus failed to allege the deprivation of a protected property or legal interest, so the district court did not need to reach the merits of his procedural or substantive due process claims.

*McClelland v. Katy Indep. Sch. Dist.,* 63 F.4ᵗʰ 996, 1014-15 (5th Cir. 2023) (affirming district court's Rule 12(b)(6) dismissal).

2.39    This Court should reach the same result here – Plaintiffs' Complaint does not allege a deprivation of J.E.C.'s protected property or liberty interests (again, J.E.C.'s placement in DAEP does not violate his Fourteenth Amendment interests) and, as such, Plaintiffs have not stated plausible Fourteenth Amendment procedural or substantive due process claims under Section 1983. These claims should therefore be dismissed as in *McClelland* and the other cases cited above.

### 3. Plaintiffs have not alleged facts showing their equal protection claim is plausible

2.40    Again assuming, *arguendo,* that Plaintiffs have plausibly pled an official policy/custom of discrimination or retaliation, dismissal of the Section 1983 claim is nevertheless still proper because Plaintiffs' Complaint does not allege facts showing a plausible equal protection claim.[11]

2.41    The equal protection clause of the Fourteenth Amendment requires that all persons similarly situated be treated alike. *See City of Cleburne, Tex. v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439 (1989).[12] In order to establish a violation of one's equal protection rights, a plaintiff

---

[11] According to Plaintiffs' Complaint, "Defendant's Section 1983 violations as to Plaintiff J.E.C. were committed under the color of law and resulted in the violation of Plaintiff J.E.C.'s… equal protection rights[.]" Dkt. 1, ¶ 48.

[12] Where a plaintiff is not a member of a suspect class or where the conduct alleged does not involve a fundamental right, courts require only that there be a rational relation between the differential treatment of similarly situated individuals and a legitimate government interest. *Richard v. Hinson,* 70 F.3d 415, 417 (5th Cir. 1995). Significantly, the right to public education is not a fundamental right. *San Antonio Ind. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 35 (1973).

must show "the existence of purposeful discrimination motivating the state action which caused the complained-of injury." *Johnson v. Rodriguez,* 110 F.3d 299, 306 (5th Cir. 1997) (quoting *McCleskey v. Kemp,* 481 U.S. 279, 292-93).[13] Stated another way,

> Basic to any complaint of denial of equal protection must be some showing that the persons or groups being treated differently are similarly situated an that their disparate treatment by the state is either without any rational basis or is based on some invidious factor such as race.

*Davis v. Georgia St. Bd. of Educ.,* 408 F.2d 1014, 1015 (5th Cir. 1969).

2.42    Again,

> To state a claim for equal protection, "the plaintiff must prove that similarly situated individuals were treated differently." *Beeler v. Rounsavall,* 328 F.3d 813, 816 (5th Cir. 2003) (quoting *Bryan v. City of Madison,* 213 F.3d 267, 276 (5th Cir. 2000)). Being similarly situated is the key. "Because the clause's protection reaches only dissimilar treatment among similar people, if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action does not deny equal protection of the laws." *Mahone v. Addicks Util. Dist. of Harris Cnty.,* 836 F.2d 921, 923 (5th Cir. 1988).

*Hines v. Quillivan,* 982 F.3d 266, 272-73 (5th Cir. 2020).

2.43    Although unclear from Plaintiffs' allegations, it appears Plaintiffs could be asserting the equal protection claim in this case under either a "class-of-one" theory or a "selective enforcement" theory. "Although similar, the theories require slightly different showings." *Txi Operations, LP v. City of McKinney,* 2023 U.S. Dist. Lexis 5100, *47 (E.D. Tex. 2023). "To establish a class-of-one claim, a plaintiff must show that (1) he or she was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment." *Id.* (citing *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)). "To establish a selective enforcement claim, a plaintiff must

---

[13] "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir. 1995).

show that (1) 'that similarly situated individuals were treated differently' and (2) 'the government official's acts were motivated by improper considerations, such race, religion, or the desire to prevent the exercise of a constitutional right." *Id.* at 47-48 (quoting *Villarreal v. City of Laredo,* 44 F.4[th] 363, 375 (5th Cir. 2022)).[14] Importantly, "[w]hether [the plaintiff] has identified a similarly situated comparator that was treated differently is a requirement under both theories." *Id.* at 48.

2.44    However, notwithstanding the above requirements to state a viable equal protection claim, Plaintiffs' Complaint does not list any specific instances that they consider examples of violations of J.E.C.'s equal protection rights – for example, all students in J.E.C.'s class (not just J.E.C.) were given the same assignment to not write about "old dead white guys." See Dkt. 1, ¶ 10. Nor does Plaintiffs' Complaint allege or identify any similarly situated comparators – for example, the Complaint does not identify or allege that any students who have admittedly threatened to kill their teacher on social media in violation of the student code of conduct, like J.E.C. admittedly did, but who were not assigned to DAEP. Rather, Plaintiffs' Complaint simply makes non-factual, conclusory allegations of unequal protection. This is insufficient to state a plausible claim for relief.

2.45    For these reasons, Plaintiffs' Complaint fails to allege a plausible equal protection claim under Section 1983. This claim should therefore be dismissed pursuant to Rule 12(b)(6).

### III.
### CONCLUSION AND PRAYER

3.1    For the above reasons, Defendant CISD asks the Court to dismiss Plaintiffs' claims under 42 U.S.C. §2000d, 20 U.S.C. §1681 and 42 U.S.C. §1983 for failure to state a claim upon which can be granted.

---

[14] "The conscious exercise of some selectivity in enforcement is not in itself a federal constitution violation." *Allred's Produce v. U.S. Dep't of Agric.,* 178 F.3d 743, 748 (5th Cir. 2000).

Respectfully submitted,

**ABERNATHY, ROEDER, BOYD & HULLETT, P.C.**

*/s/Charles J. Crawford*
**CHARLES J. CRAWFORD**
State Bar No. 05018900
**CHAD TIMMONS**
State Bar No. 24060732
**LUCAS C. HENRY**
State Bar No. 24101901
1700 Redbud Blvd., Suite 300
McKinney, Texas 75070
Phone: (214) 544-4000
Fax: (214) 544-4040
ccrawford@abernathy-law.com
ctimmons@abernathy-law.com
lhenry@abernathy-law.com

**ATTORNEYS FOR DEFENDANT COPPELL INDEPENDENT SCHOOL DISTRICT**

## CERTIFICATE OF SERVICE

I certify that on June 1, 2023, a true and correct copy of the foregoing was served on Plaintiffs' counsel through the Court's ECF system.

*/s/Charles J. Crawford*
Charles J. Crawford